**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Case No. __________

**LEKESHA DUNLOP,**

Plaintiff,

v.

**ROSE ASSOCIATES INC.,**

Defendant.

COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND FAILURE TO ACCOMMODATE

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. Plaintiff Lekesha Dunlop, proceeding pro se, brings this action against her former employer, Rose Associates Inc. ("Rose"), for disability discrimination and failure to provide reasonable accommodation arising from Rose's response to her medically documented asthma and fragrance-triggered respiratory symptoms.

2. Beginning in 2021, Rose knew that exposure to strong fragrances in the workplace triggered Plaintiff's asthma and related symptoms, including shortness of breath, headaches, dizziness, and nausea. Plaintiff repeatedly notified management and Human Resources and provided medical documentation.

3. Rose initially responded to fragrance incidents by allowing Plaintiff to work in alternative spaces. In 2021, Plaintiff's supervisor reserved a conference room so Plaintiff could work away from a coworker's fragrance. In 2022, Human Resources told Plaintiff she could relocate to available hoteling seats when fragrance exposure made her uncomfortable.

4. After a change in Human Resources leadership in 2023, Plaintiff continued to seek ways to work while avoiding fragrance triggers. She used conference rooms, and later an open common area known as "The Commons," while notifying her supervisor of her location.

5. Rose provided an air purifier, but Plaintiff promptly advised her supervisor in writing that it was not working and that fragrances continued to trigger her symptoms. Rose later denied Plaintiff's

request to work from home three or more days per week and offered other measures, including possible future cubicle relocation, and a mask.

6. By October 2024, Rose knew both that Plaintiff continued to experience fragrance-triggered symptoms and that she had been using The Commons as an alternative workspace for well over a year. On October 2, 2024, Rose prohibited Plaintiff from working in The Commons and directed her to remain at her desk and contact Human Resources again regarding accommodation.

7. The October 2, 2024 meeting was recorded. During that meeting, Plaintiff explained that she had already gone through the accommodation process and could not remain at her desk when fragrance interfered with her breathing. Her supervisor stated that Plaintiff could not work in The Commons, suggested a mask, and warned that there could be consequences if Plaintiff continued to use The Commons.

8. Six days later, on October 8, 2024, Plaintiff again notified her supervisor in writing that perfume was overwhelming, was making her sick, and required her to leave her desk. Plaintiff resigned on October 15, 2024, effective October 17, 2024, after concluding that she no longer had an effective way to perform her job without recurring exposure to known asthma triggers.

9. Plaintiff seeks relief under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101 et seq.; the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290 et seq.; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code §§ 8-101 et seq.

**PARTIES**

10. Plaintiff Lekesha Dunlop is an adult resident of Bronx County, New York. Plaintiff was employed by Rose as a Lease Administrator from May 25, 2020 through October 17, 2024.

11. Defendant Rose Associates Inc. is a private employer and real-estate/property-management company with an office at 777 Third Avenue, 6th Floor, New York, New York 10017. Rose employed more than fifteen employees during the relevant period.

## JURISDICTION AND VENUE

12. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the ADA.

13. This Court has supplemental jurisdiction over Plaintiff's related NYSHRL and NYCHRL claims under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts.

14. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 and the ADA because Defendant is located in Manhattan and the employment practices at issue occurred in New York County, within this District.

## ADMINISTRATIVE EXHAUSTION

15. Plaintiff created an EEOC inquiry concerning the accommodation dispute on October 4, 2024, two days after the October 2 meeting.

16. Plaintiff signed and filed EEOC Charge No. 520-2025-00122 on June 26, 2025. The charge alleged disability discrimination, denial of reasonable accommodation, and constructive discharge.

17. The EEOC issued a Determination and Notice of Rights on May 27, 2026. Plaintiff downloaded and received the Notice on May 29, 2026. The Notice authorized Plaintiff to bring suit within 90 days of receipt.

18. Pursuant to the EEOC-NYSDHR worksharing procedures, Plaintiff's EEOC charge was dual-filed with the New York State Division of Human Rights. NYSDHR acknowledged receipt of the charge and deferred its investigation to the EEOC.

19. This action is timely filed within 90 days of Plaintiff's receipt of the EEOC Notice of Rights.

## FACTUAL ALLEGATIONS

20. Plaintiff performed lease-administration work, including generating and processing leases and renewals, communicating with residents, working in Yardi and other systems, printing and mailing documents, scanning records, and handling other lease-related functions.

21. Plaintiff was qualified to perform the essential functions of her position and remained employed as a Lease Administrator until October 17, 2024.

22. Plaintiff has asthma and allergy-related fragrance sensitivity that can substantially limit breathing and respiratory function when active.

23. Rose knew of Plaintiff's condition and fragrance-triggered symptoms by at least 2021 through Plaintiff's repeated communications with supervisors and Human Resources and through medical documentation submitted in connection with accommodation requests.

24. On August 31, 2021, after Plaintiff reported that a coworker's fragrance was making it difficult for her to work nearby, her then-supervisor reserved a conference room for Plaintiff to work in away from the fragrance.

25. In June 2022, after another fragrance complaint, then-Human Resources Managing Director Kyle Maldiner told Plaintiff she was welcome to move to available hoteling seats in another room and use her laptop there.

26. These earlier arrangements showed that temporary relocation within the office was feasible and had previously been used by Rose to address the same type of workplace barrier.

27. By May 2023, Plaintiff was again experiencing fragrance-triggered symptoms in her regular work area. On May 9, 2023 and May 22, 2023, she notified her supervisor, Sandra Rodriguez, that she was working in the “phone booth” because of fragrance and she needed to relocate.

28. On May 23, 2023, Plaintiff notified Human Resources and Ms. Rodriguez that she had tried to remove herself from a scent that was triggering asthma and that Ms. Rodriguez had told her she could not use the conference rooms or phone booth as Plaintiff understood the instruction. Plaintiff expressly asked Human Resources to discuss other possibilities and accommodation solutions.

29. Human Resources responded that communal rooms could not be blocked off for an entire day, that an air purifier was being ordered, and that, other than a mask and use of vacant space when available, no additional accommodation was then available without further guidance from Plaintiff's physician. Human Resources also stated that an alternate desk location was not then an option because of limited space and that long-term work from home was not feasible.

30. Plaintiff began using The Commons, an open common area, when necessary to avoid fragrance exposure. On May 24, 2023, Plaintiff notified Ms. Rodriguez that she was in The Commons, and Ms. Rodriguez acknowledged the message.

31. On May 30, 2023, Plaintiff again notified Ms. Rodriguez that she was working in The Commons. When Ms. Rodriguez asked whether the air purifier was not working, Plaintiff responded in writing that the purifier was not working and that scents were still triggering her.

32. Plaintiff completed Rose's formal reasonable-accommodation process and submitted medical documentation. On July 18, 2023, Rose denied Plaintiff's request to work remotely three or more days per week, citing onsite duties. Rose stated that it would continue one remote day per week, allow vacant breakout spaces when available, provide a fan/air purifier, explore relocating Plaintiff's desk if a more ideal cubicle became available, and permit a mask.

33. The alternatives did not eliminate the recurring workplace barrier. The purifier had already been reported ineffective. The phone booth was later restricted to brief use, and no permanent alternate cubicle that resolved the fragrance exposure was provided during the relevant period.

34. On November 9, 2023, when Plaintiff attempted to use the phone booth because of perfume or cologne, Ms. Rodriguez instructed her that she could not use it for more than fifteen minutes. Plaintiff responded that she would move to The Commons.

35. Plaintiff continued using The Commons as needed to avoid fragrance triggers while remaining available by email and telephone and performing her work. Her supervisor knew of this practice from Plaintiff's written notices.

36. On October 2, 2024, Ms. Rodriguez met with Plaintiff. At the beginning of the meeting, Ms. Rodriguez assigned Plaintiff responsibility for approximately 311 additional affordable-housing units across six properties and explained additional duties.

37. Ms. Rodriguez also discussed a dress-code issue concerning gym shoes.

38. Ms. Rodriguez then stated that several people had reported Plaintiff was watching movies while in The Commons. Plaintiff denied the allegation. During the recorded meeting, Ms. Rodriguez stated that she herself had never seen Plaintiff watching movies.

39. Ms. Rodriguez told Plaintiff that she needed to stay at her desk and that if fragrance was a problem she should contact Human Resources.

40. Plaintiff responded that she had already contacted Human Resources and that she could not remain at her desk when fragrance caused difficulty breathing.

41. Ms. Rodriguez stated that Plaintiff could not go to The Commons. When Plaintiff asked whether she was expected to remain where she could not breathe, Ms. Rodriguez suggested that Plaintiff could wear a mask.

42. Plaintiff explained that she had already gone through the accommodation process and wanted to work at her desk but could not do so when fragrances were triggering her symptoms.

43. During the same conversation, Ms. Rodriguez stated that she could not have Plaintiff working in The Commons and not know what Plaintiff was doing, and warned that if Plaintiff continued to go to The Commons there might be consequences.

44. Ms. Rodriguez's written follow-up email that evening memorialized the assignment of additional duties, the gym-shoe discussion, the directive that Plaintiff be at her desk and that working from The Commons was no longer an option, and the movie allegation and Plaintiff's denial. It directed Plaintiff to Human Resources regarding any additional accommodation.

45. Rose later told the EEOC that, during the October 2 meeting, Plaintiff was offered a cubicle relocation, smaller conference rooms, and an air purifier/fan, and that Plaintiff declined all three. Those claimed offers and rejections do not appear in the recorded October 2 conversation or Ms. Rodriguez's contemporaneous written memorialization of that meeting.

46. On October 8, 2024, Plaintiff emailed Ms. Rodriguez that perfume was too overwhelming, was making her sick, and that she had to leave her desk.

47. After the October 2 prohibition on working in The Commons, the recurring fragrance problem remained unresolved, and Plaintiff no longer had an effective accommodation that allowed her to perform her job without exposure that triggered her asthma.

48. Plaintiff submitted her resignation on October 15, 2024, effective October 17, 2024.

49. Plaintiff alleges that the loss of an effective alternative workspace, combined with Rose's knowledge that the purifier had not worked and the continued recurrence of fragrance-triggered respiratory symptoms, caused her to leave her employment.

50. As a result of Defendant's conduct, Plaintiff has suffered lost wages and benefits, emotional distress, inconvenience, and other compensable harm to be established through discovery and at trial.

**COUNT I**
**ADA - FAILURE TO PROVIDE REASONABLE ACCOMMODATION**
**42 U.S.C. § 12112(b)(5)(A)**

51. Plaintiff repeats and realleges paragraphs 1 through 50.

52. Plaintiff is a qualified individual with a disability within the meaning of the ADA, including an impairment affecting breathing and respiratory function.

53. Defendant knew of Plaintiff's disability and the workplace limitation caused by fragrance exposure.

54. Plaintiff requested reasonable accommodations and participated in an accommodation process, including proposing relocation, alternative workspace, and additional remote work.

55. Defendant knew that the air purifier had not effectively addressed the fragrance triggers and knew that Plaintiff had been using alternative workspaces to continue performing her duties.

56. On October 2, 2024, Defendant prohibited Plaintiff from using The Commons without implementing another effective accommodation that addressed the known limitation, despite Plaintiff's statement that she had already sought accommodation and could not safely remain at her desk during fragrance exposure.

57. Defendant thereby failed to provide an effective reasonable accommodation for Plaintiff's known disability, in violation of the ADA.

**COUNT II**

**ADA - DISABILITY DISCRIMINATION / CONSTRUCTIVE DISCHARGE**
**42 U.S.C. § 12112(a)**

58. Plaintiff repeats and realleges paragraphs 1 through 57.

59. Defendant subjected Plaintiff to terms and conditions of employment affected by her disability and accommodation needs, including restricting alternative workspaces used to avoid known respiratory triggers and threatening possible consequences for continued use of The Commons.

60. Plaintiff alleges that, after the October 2, 2024 restriction, continued fragrance exposure and the absence of an effective accommodation made her working conditions sufficiently intolerable that she resigned effective October 17, 2024.

61. Defendant's conduct constituted disability discrimination and resulted in Plaintiff's constructive discharge, in violation of the ADA.

**COUNT III**
**NYSHRL - DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE**
**N.Y. Executive Law §§ 296(1), 296(3)**

62. Plaintiff repeats and realleges paragraphs 1 through 61.

63. Plaintiff had a disability within the meaning of the NYSHRL, Defendant knew of that disability, and Plaintiff was able to perform the essential functions of her position with reasonable accommodation.

64. Defendant failed to provide reasonable accommodation to Plaintiff's known disability and discriminated against Plaintiff in the terms, conditions, and privileges of employment because of disability and her accommodation needs.

65. Defendant's conduct violated the NYSHRL.

**COUNT IV**
**NYCHRL - DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE**
**N.Y.C. Admin. Code § 8-107(1), (15)**

66. Plaintiff repeats and realleges paragraphs 1 through 65.

67. Plaintiff had a disability within the broad meaning of the NYCHRL, Defendant knew or should have known of the disability, and Plaintiff could satisfy the essential requisites of her job with reasonable accommodation.

68. Defendant failed to provide a reasonable accommodation enabling Plaintiff to perform her job without recurring exposure to known fragrance triggers and treated Plaintiff less well in the terms and conditions of employment because of disability and accommodation needs.

69. Defendant's conduct violated the NYCHRL.

**COUNT V**
**NYCHRL - FAILURE TO ENGAGE IN COOPERATIVE DIALOGUE**
**N.Y.C. Admin. Code § 8-107(28)**

70. Plaintiff repeats and realleges paragraphs 1 through 69.

71. Defendant had notice that Plaintiff required accommodation related to disability and had previously engaged with Plaintiff regarding accommodation.

72. On October 2, 2024, after Defendant withdrew Plaintiff's ability to use The Commons, Plaintiff explained that she had already completed the accommodation process, that the existing measures had not resolved the fragrance-triggered breathing problem, and asked what reasonable accommodation remained available.

73. Plaintiff alleges that Defendant withdrew the alternative workspace without identifying or implementing an effective replacement accommodation responsive to the limitation Plaintiff raised during that conversation.

74. To the extent this conduct failed to satisfy Defendant's obligations under N.Y.C. Administrative Code § 8-107(28), Defendant violated the NYCHRL.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant and award:

A. Back pay and lost employment benefits, with appropriate interest;

B. Front pay and/or other equitable monetary relief in lieu of reinstatement as appropriate;

C. Compensatory damages for emotional distress and other nonpecuniary losses;

D. Punitive damages to the extent permitted by law;

E. Costs of this action and, if Plaintiff later retains counsel, reasonable attorney's fees to the extent permitted by law;

F. Declaratory and injunctive relief as the Court deems appropriate; and

G. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 21, 2026
Bronx, New York

Respectfully submitted,

Lekesha Dunlop, Plaintiff Pro Se
9 Fordham Hill Oval, Apt. 10G
Bronx, NY 10468
Telephone: (646) 327-5828
Email: lrdunlop2020@outlook.com